The Honorable Billy Joe Purdom State Representative HCR 66, Box 34 Yellville, AR 72687-9605
Dear Representative Purdom:
This is in response to your request for an opinion on the following question:
 Please explain the process of selling property in the Sheriff's custody and the disposition of the proceeds of such sales when:
 (a) the item is no longer needed as evidence by a trial court;
 (b) the item was recovered and unclaimed by an owner from the Sheriff's property storage room; or
 (c) the item is an operational legal firearm. given that none of the recovered items were involved in drug-related activity.
Your opinion request implies that by "property in the custody of the Sheriff," you mean property that has been seized or confiscated for some reason. Accordingly, this opinion is based on that assumption.
The disposition of seized property, including contraband, is generally governed by A.C.A. § 5-5-101 (1987), as amended by Act 1030 of 1991. See also A.R.Cr.P. Rule 15.2; Wilburn Jennings v. Topeka Corp., 265 Ark. 141, 577 S.W.2d 406
(1979).[1] It must be noted initially that § 5-5-101(a) requires all seized property to be returned to its rightful owner or possessor, except for contraband owned by a defendant. Thus, for purposes of this opinion, it will be assumed that the property in question is either contraband owned by a defendant, unclaimed contraband, or other unclaimed seized property. Contraband is defined in § 5-5-101(b) to include:
 (1) Any article possessed under circumstances prohibited by law;
 (2) Any weapon or other instrumentality used in the commission or attempted commission of a felony; and
(3) Any other article designated contraband by law.
A.C.A. § 5-5-101(b) (1987), as amended by Act 1030 of 1991. Under § 5-5-101(c), contraband must be destroyed, unless it is capable of lawful use, in which case it may, in the discretion of the court having jurisdiction, be retained for use by the law enforcement agency responsible for the arrest, or sold and the proceeds disposed of in accordance with § 5-5-101(e), (f), and (g). See Act 1030 of 1991. For purposes of this opinion, then, it will also be assumed that if the property in question is contraband, it is capable of lawful use and that a decision has been made by the proper court to sell the property.
The same procedures appear to govern the sale of all three types of property set out in your request. If the property to be sold fits the definition of contraband under § 5-5-101(b), it must be sold in accordance with the provisions of § 5-5-101(e), (f), and (g). See A.C.A. § 5-5-101(c) (1987), as amended by Act 1030 of 1991. These provisions state as follows:
 (e) The time and place of sale of seized property shall be advertised for at least fourteen (14) days next before the day of sale by posting written notice at the courthouse door and by publication in the form of at least two (2) insertions, at lease three (3) days apart, before the day of sale in a weekly or daily newspaper published or customarily distributed in the county.
 (f) All seized property to be sold at public sale shall be offered for sale on the day for which it was advertised between 9:00 a.m. and 3:00 p.m., publicly, by auction, and for ready money. The highest bidder shall be the purchaser.
 (g) The proceeds from any sale of seized property shall be delivered to the county treasurer to be held by him in a separate account for a period of three (3) months. If, during this time, any person establishes to the satisfaction of the treasurer that he was at the time of sale the owner of any seized article sold as above provided, he shall be paid the amount realized from sale of such property less the expenses of the sale. All moneys in the separate account not claimed or paid within the designated three-month period shall be paid into the general fund of the county.
Section 5-5-101(g) specifically provides that the proceeds from any sale of seized property must be delivered to the county treasurer and held in a separate account for three months to allow time for claims of ownership of the sold article. At the end of the three month period, any money in the separate account not claimed or paid out to a proven owner (presumably other than a defendant) shall be paid into the county general fund. Because this transfer of money is specifically authorized by law, it would appear that a county court order is not necessary to effectuate it.
If the property to be sold is unclaimed seized property other than contraband, § 5-5-101(d) requires that it be sold at a public auction held by the sheriff of the county in which the seizure took place. The proceeds of the sale, less the cost of sale and storage charges incurred, shall be paid into the county general fund. It is my opinion that the provisions of §5-5-101(e), (f), and (g) are intended to apply to these sales as well. Thus, the proceeds would have to go into a separate account for three months prior to being transferred into the county general fund, as required by § 5-5-101(g).
We note your particular interest in the interaction between the circuit court, sheriff's office, and county court in the sale process, including directing the proceeds of a sale. Section5-5-101 clearly sets out the disposition of proceeds of a sale of seized property, leaving little room for interaction among these three entities. Presumably, whoever conducts the sale would be responsible for delivering the proceeds to the county treasurer. Unfortunately, § 5-5-101 is ambiguous with respect to responsibility for the sale of seized property. The sheriff appears to be responsible for at least one aspect of the sale of unclaimed seized property, see § 5-5-101(d), but it is entirely unclear who is responsible for the sale of contraband under the statute. In my opinion, while the county court could reasonably accept responsibility for the sale of such property, as any sale proceeds go into the county general fund, legislative clarification may be warranted.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Catherine Templeton.
Sincerely,
Winston Bryant Attorney General
[1] The specific provisions of A.C.A. § 5-5-101 (1987), as amended by Act 1030 of 1991, control the disposition of seized property, as opposed to the general provisions regarding disposition of county property in A.C.A. § 14-16-105 (1987).See Atty. Gen. Op. No. 91-011. However, it should be noted that the provisions of § 5-5-101 would yield to a statute specifying the procedure for disposition of a particular type of seized property, such as property seized under the Controlled Substances Act. See A.C.A. § 5-5-102 (1987); A.C.A. § 5-64-505 (Advance Code Service 1990-1991). While you note in your opinion request that none of the items to be sold were involved in drug-related activity, any other applicable provisions governing the disposition of a particular type of seized property must be followed.